IN THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

GARY B. DUNCAN, )
 )
 Claimant-Appellant, )
 )
 v. ) No. 2020-2099
 )
ROBERT WILKIE, )
Secretary of Veterans Affairs, )
 )
 Respondent-Appellee. )

RESPONDENT-APPELLEE'S INFORMAL BRIEF
AND SUPPLEMENTAL APPENDIX

Pursuant to Rules 28(g) and 30(e) of the Rules of the United States Court of

Appeals for the Federal Circuit, respondent-appellee, Robert Wilkie, Secretary of

Veterans Affairs (VA), respectfully submits this brief and appendix in response to

the informal brief filed by claimant-appellant, Gary B. Duncan.  We respectfully

request that the Court dismiss the appeal or, in the alternative, affirm the decision

on appeal.

STATEMENT OF THE CASE

I. Nature Of The Case

Mr. Duncan appeals an April 21, 2020 order of the United States Court of

Appeals for Veterans Claims (Veterans Court) in *Gary B. Duncan v. Robert L.*

*Wilkie, Secretary of Veterans Affairs*, No. 20-2116, which denied his petition for

extraordinary relief in the nature of a writ of mandamus.  Appx16-Appx18.[1]

II.      Statement of Facts and Course of Proceedings Below

Mr. Duncan served on active duty from September 1976 to March 1979. Appx11.  He was awarded service connection and a 10 percent combined rating in a July 1979 rating decision.  Appx12.  This matter relates to an overpayment to Mr. Duncan resulting from payments made while Mr. Duncan was incarcerated, and his request for waiver of recovery of the overpayment.  *See* Appx11-Appx12.

In September 2012, the Board of Veterans' Appeals (board) denied entitlement to waiver of recovery of an overpayment of VA compensation benefits in the amount of $11,490.90.  *See* Appx11.  The Veterans Court subsequently vacated and remanded the September 2012 decision to the board for further proceedings.  *See* Appx11.  The board remanded the matter for additional proceedings in 2014 and 2017, and remanded the matter again on January 9, 2019. *See* Appx11.

---

[1]  "Appx__" refers to a page or pages of the documents attached to Mr. Duncan's informal brief.  "Cl. Br. __" refers to a page or pages of Mr. Duncan's informal brief.  Those citations refer to the page numbers designated in the CM/ECF header.  "SAppx__" refers to a page or page numbers of the supplemental appendix attached to this response brief.  References to the supplemental appendix refer to the page numbers that we have included at the bottom of each page.

In its January 9, 2019 decision, the board, among other things, found that Mr. Duncan had raised issues concerning the creation of the debt, the amount of the debt, and whether the "VA was solely responsible for the Veteran being erroneously paid benefits." Appx11.

The board determined that further appellate review of Mr. Duncan's waiver claim "must be deferred pending formal adjudication of a threshold determination on the propriety of the creation of the debt prior to a decision on the waiver of indebtedness." Appx14 (citing *Schaper v. Derwinski*, 1 Vet. App. 430, 437 (1991) ("[W]hen a veteran raises the validity of the debt as part of a waiver application . . . it is arbitrary and capricious and an abuse of discretion to adjudicate the waiver application without first deciding the veteran's challenge to the lawfulness of the debt asserted against him or her."); VAOPGCPREC 6-98 (1998) (holding that when a veteran challenges the validity of the debt and seeks waiver of the debt, the Regional Office must first fully review the debt's validity and, if the office believes the debt to be valid, prepare a written decision fully justifying the validity of the debt before referring the waiver request to the Committee on Waivers and Compromises)). As a result, the board remanded the matter for adjudication of the issue of whether the overpayment was properly created, to include the amount of debt owed and the issue of sole administrative error. Appx14.

On March 24, 2020, Mr. Duncan "filed a petition for extraordinary relief to compel VA to act on his claim to waive the recovery of an overpayment[,]" alleging generally that VA had "delayed his appeal of this issue and that a writ" was warranted as a result.  Appx16.

On April 21, 2020, the Veterans Court denied Mr. Duncan's petition. Appx16-Appx18.  The Veterans Court evaluated Mr. Duncan's petition based on his allegation of unreasonable delay under the factors outlined in *Telecomms. Research & Action Ctr. (TRAC) v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984), as required by *Martin v. O'Rourke*, 891 F.3d 1338, 1344-45, 1348 (Fed. Cir. 2018). Appx17-Appx18.  "After considering all the facts through the lens of *TRAC*, the [Veterans] Court conclude[d] that petitioner has failed to demonstrate that any delay here has been so egregious to warrant the issuance of a writ" and denied his petition.  Appx18.

Mr. Duncan filed a motion for reconsideration or, in the alternative, consideration by a panel.  SAppx4.  The single judge denied the motion for reconsideration, and the panel granted the motion for panel decision and ordered that the single-judge order remains the decision of the court.  SAppx6-7.  The Veterans Court entered judgment on June 8, 2020.  SAppx1.  Mr. Duncan filed his notice of appeal on July 21, 2020.  *See* SAppx4.

The Court docketed Mr. Duncan's informal brief on August 31, 2020. *See* ECF No. 8. Mr. Duncan challenges the Veterans Court's decision and, among other things, seeks an order compelling the Secretary to carry out the board's January 9, 2019 order, which ordered the VA "to adjudicate the issue of whether the overpayment was properly created, to include the amount of debt owed and the raised matter of sole administrative error and consider the waiver issue, if appropriate (i.e., if creation of the overpayment debt was valid)." SAppx11. Alternatively, Mr. Duncan asks that this Court remand the matter to the Veterans Court to consider if his case is entitled to expeditious treatment, and whether further delay could frustrate the Veterans Court's and this Court's potential jurisdiction over future appeals. *See* Cl. Br. 7. And he requests that this Court retain jurisdiction over the matter pending final disposition by the VA. *See* Cl. Br. 7.

On or about September 25, 2020, the VA issued a letter to Mr. Duncan, enclosing a Supplemental Statement of the Case (SSOC) responding to the board's January 9, 2019 order to decide whether the overpayment was properly created, any amount owed, any error involved, and to consider waiver. *See* SAppx8; SAppx10. In addition, a September 22, 2020 memorandum sets forth the results of the VA's audit of the debt. SAppx16.

In response to that board's remand order, the VA affirmed its denial of Mr. Duncan's "waiver request for $11,490.90[.]" SAppx8; SAppx14. The SSOC, however, noted that it had given Mr. Duncan a $2.00 credit for a cost of living adjustment. SAppx14; *see also* SAppx16. Among other things, the VA explained that the "SSOC is an explanation of the evidence we used to make the decision." SAppx8. And the letter transmitting the SSOC to Mr. Duncan notified him of his right to respond to the SSOC, and that in the event that Mr. Duncan does not respond within 30 days, the letter states that his appeal will be submitted to the board for review. SAppx8.

## ARGUMENT

### I. Standard Of Review

#### A. Jurisdictional Standard And Mootness

This Court possesses limited jurisdiction to review decisions by the Veterans Court. *Wanless v. Shinseki*, 618 F.3d 1333, 1336 (Fed. Cir. 2010). Pursuant to 38 U.S.C. § 7292(a), the Court may review a Veterans Court decision with respect to the validity of a decision of the court on a rule of law or the validity or interpretation of any statute or regulation relied on by the Veterans Court in making that decision. Absent a constitutional issue, this Court lacks jurisdiction to "review (A) a challenge to a factual determination, or (B) a challenge to a law or regulation as applied to the facts of a particular case." 38 U.S.C. § 7292(d)(2).

6

In reviewing a Veterans Court decision, the Court must decide "all relevant questions of law, including interpreting constitutional and statutory provisions" and must set aside any regulation or any interpretation thereof "other than a determination as to a factual matter" relied upon by the Veterans Court that it finds to be "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or in violation of a statutory right; or (D) without observance of procedure required by law."  38 U.S.C. § 7292(d)(1).  The Court reviews questions of statutory and regulatory interpretation *de novo*.  *See Mayfield v. Nicholson*, 499 F.3d 1317, 1321 (Fed. Cir. 2007).

"It is well established that the [All Writs Act] does not expand a court's jurisdiction."  *Cox v. West*, 149 F.3d 1360, 1363 (Fed. Cir. 1998) (citing *In re Wick*, 40 F.3d 367, 373 (Fed. Cir. 1994)).  This Court has found jurisdiction to review the Veterans Court's denial of a petition for extraordinary relief in the nature of a writ of mandamus when that decision involves a constitutional claim or the interpretation of a regulation or statute.  *Lamb v. Principi*, 284 F.3d 1378, 1381 (Fed. Cir. 2002).[2]  In *Beasley v. Shinseki*, the Court noted its "consistent practice of

---

[2]  Responding to the assertion that the denial of mandamus was an inherently fact-based determination that would preclude this Court's review in nearly all circumstances, the Court in *Lamb*, commented that 38 U.S.C. § 7292(d)(2) would

7

exercising jurisdiction over mandamus petitions that raise legal issues otherwise within our jurisdiction," and explained that if an appeal from the denial of a petition for extraordinary relief presents a "non-frivolous legal question," the Court "may determine whether the petitioner has satisfied the legal standard for issuing the writ." 709 F.3d 1154, 1157-58 (Fed. Cir. 2013). The Court explained, however, that "[i]n conducting such a review, we do not interfere with the [Veterans Court's] role as the final appellate arbiter of the facts underlying a veteran's claim or the application of veterans' benefits law to the particular facts of a veteran's case." *Id.* at 1158.

Consistent with *Beasley*, the Court has continued to refuse to exercise jurisdiction over appeals of Veterans Court denials of mandamus that challenge factual determinations or application of law to fact. *See, e.g.*, *McLean v. Wilkie*, 780 F. App'x 892, 895 (Fed. Cir. 2019) (non-precedential); *Brown v. Shinseki*, 517 F. App'x 938 (Fed. Cir. 2013) (non-precedential); s*ee also Gebhart v. Peake*, 289

---

not in all circumstances limit its jurisdiction to review Veterans Court decisions issued pursuant to the All Writs Acts, 28 U.S.C. § 1651(a), including decisions concerning petitions for extraordinary relief. 284 F.3d at 1381-82. The *Lamb* Court did not have to decide the extent of the Court's jurisdiction in such cases, however, because that case involved a statutory interpretation issue and a constitutional issue, both of which are expressly included within the Court's jurisdiction as defined by 38 U.S.C. §§ 7292(a) and (d)(2). *See id.* at 1381 ("Although some aspects of Lamb's appeal may involve only the application of statutory provisions to the facts of this case, two of his contentions are not in that category.").

F. App'x 402, 403 (Fed. Cir. 2008) (non-precedential) ("While we have jurisdiction to review the Veterans Court's denial of mandamus in some circumstances—including those involving the interpretation of a regulation or statute—we do not have jurisdiction to consider Mr. Gebhart's appeal of the Veterans Court decision in this case because any such challenge would involve factual determinations and/or the application of law to the facts of this case." (citations omitted)).

Further, if a case becomes moot while an appeal is pending before the Court, the appeal should be dismissed.  *See, e.g., Martin*, 891 F.3d at 1349 (dismissing the appeals of three of the appellants as moot); *see also Saxiones v. Merit Systems Protection Board,* 734 Fed. Appx. 752, 753 (Fed. Cir. 2018) (not published in West's Federal Reporter) (citing *DeFunis v. Odegaard,* 416 U.S. 312, 316 (1974) ("[F]ederal courts are without power to decide questions that cannot affect the rights of litigants in the case before them." (internal quotation marks omitted); *Nasatka v. Delta Sci. Corp.,* 58 F.3d 1578, 1580 (Fed. Cir. 1995) ("If an event occurs while a case is pending on appeal that makes it impossible for the court to grant 'any effectual relief whatever' to a prevailing party, the appeal must be dismissed as moot." (quoting *Church of Scientology v. United States,* 506 U.S. 9, 12 (1992)))).

B. Standard Of Review Applicable In An Appeal From A Denial Of A Petition For Extraordinary Relief Based On The Assertion Of Delay

Because the "issuance of the writ is in large part a matter of discretion with the court to which the petition is addressed," *Kerr v. U.S. Dist. Court*, 426 U.S. 394, 403 (1976), the Court has reviewed the Veterans Court's denial of a petition for a writ of mandamus for abuse of discretion. *Lamb*, 284 F.3d at 1384. This Court has adopted "the *TRAC* standard as the appropriate standard for the Veterans Court to use in evaluating mandamus petitions based on alleged unreasonable delay." *Martin*, 891 F.3d at 1348.

II. Mr. Duncan's Appeal Is Moot

Mr. Duncan challenges the Veterans Court's decision denying his petition for mandamus. Appx16-Appx18. The issue before the Veterans Court concerned Mr. Duncan's allegation that the VA has unduly delayed issuing a decision resolving his claim concerning the waiver of overpayment following the board's January 9, 2019 remand. *See* Appx16. Mr. Duncan requests that the Court direct the VA to carry out the January 9, 2019 remand order to decide the claim or, alternatively, that the Court remand the matter to the Veterans Court to further address the matter. Cl. Br. 7. Mr. Duncan contends that the VA's delays potentially could hinder any related future appeals that he may file in the Veterans

Court or this Court, and requests that the Court retain jurisdiction over this case pending a final disposition by the VA. *See* Cl. Br. 7.[3]

The VA's Supplemental Statement of the Case, issued after Mr. Duncan filed his informal brief, moots his appeal. *See* SAppx8; SAppx10. The SSOC expressly notes that the matter had been remanded by the board on January 9, 2019 "to adjudicate the issue of whether the overpayment was properly created, to include the amount of debit owed and the raised matter of sole administrative error and consider the waiver issue, if appropriate (i.e., if creation of the overpayment debt was valid)." SAppx11. Because the premise of Mr. Duncan's petition to the Veterans Court was alleged undue delay by the VA in considering that claim, Mr. Duncan's appeal from the Veterans Court's decision could not result in Mr. Duncan obtaining meaningful relief. His request to decide the claim, therefore, has been resolved, albeit in a manner that is unfavorable to him. SAppx11. The VA also expressly provided Mr. Duncan with notice of the remedies available to him if he disagrees with the SSOC. SAppx8. If Mr. Duncan is not satisfied with the result, he can pursue those remedies.

---

[3] This is not a case such as *Mote v. Wilkie*, No. 19-2367, 2020 WL 5755475 at **3-4, 6, 8 (Fed. Cir. Sept. 28, 2020), in which the Court denied our mootness argument, and then held that the Veterans Court erred by dismissing a mandamus petition alleging unreasonable delay without undertaking a TRAC analysis. Such analysis was conducted by the Veterans Court in this case. In addition, the VA has acted on Mr. Duncan's waiver request, which is what he had sought to compel. *See* Cl. Br. 3.

In *Saxiones,* 734 Fed. Appx. at 752, the Court dismissed a claimant's appeal from a decision of the Merit Systems Protection Board (MSPB). The MSPB found that it did not possess jurisdiction to entertain the issue raised by the appellant when the Office of Personnel Management (OPM) had not yet rendered a final decision on the issue, despite more than four years having passed. *Id.* Shortly before oral argument, OPM decided the main issue that had been raised and, as a result, the MSPB requested that the appeal be dismissed as moot. *Id.* at 753. The claimant objected, asserting that certain other issues remained, including attorney fees and issues relating to quantum. *Id.*

The Court nonetheless dismissed the appeal, finding that it appeared that OPM had granted the claimant the relief that he had sought, thus rendering the appeal moot, given that there was "no longer a live case or controversy on the issue before" the Court. *Id.* (citing *DeFunis,* 416 U.S. at 316) (additional citations omitted). The Court indicated that it would not decide the issues cited by claimant in the first instance. *Id.* Mr. Duncan's appeal similarly should be dismissed as moot.

The issue in this appeal is whether the Veterans Court erred when it denied Mr. Duncan's request for mandamus relief based on his claim that the VA was taking too long to issue a decision following the January 9, 2019 remand. Because the VA has now issued that decision, it has rendered moot the issues that were

raised before the Veterans Court.  Further, to the extent that Mr. Duncan may wish

to raise any challenges to the VA's SSOC concerning his underlying claim, "then

he may pursue them in the proper course." *See id.*  For these reasons, we

respectfully request that the appeal be dismissed as moot.

In the event that the Court does not dismiss Mr. Duncan's appeal as moot,

his appeal should be dismissed for lack of jurisdiction or, in the alternative, the

Veterans Court's decision should be affirmed, for the reasons discussed below.

III.     Response To Informal Brief Questions

1.     Has the appellant ever had another case in this Court?  If so, state the name
       and number of each case.

In his informal brief, Mr. Duncan indicates that he has never had another

case in this Court.  Claimant-Appellant's Informal Brief (Cl. Br.) 8.  We are not

aware of any other case filed by Mr. Duncan in this Court.

2.     Did the Court of Appeals for Veterans Claims decision involve the validity
       or interpretation of a statute or regulation?  If so, what are your arguments
       concerning those issues?

No.  The interpretation of a statute or regulation occurs when its meaning is

elaborated upon by the court.  *Graves v. Principi*, 294 F.3d 1350, 1354 (Fed. Cir.

2002) (citing *Forshey v. Principi*, 284 F.3d 1335, 1349 (Fed. Cir. 2002) (*en banc*)

(superseded on other grounds by Pub. L. No. 107–330, § 402(a), 116 Stat. 2820,

2832 (2002))).  The Veterans Court did not elaborate on the meaning of any statute

or regulation or make a decision on a rule of law.  Rather, the Veterans Court applied the *TRAC* factors to the facts of the case.  Appx16-18.

This Court has jurisdiction under 38 U.S.C. § 7292 to determine whether a petitioner for a writ of mandamus "has satisfied the legal standard for issuing the writ," at least where legal issues or constitutional claims are present as specified in section 7292.  *Beasley*, 709 F.3d at 1158.  The Court, however, cannot "review the factual merits of the veteran's claim" or otherwise "interfere with the [Veterans Court's] role as the final appellate arbiter of the facts underlying a veteran's claim or the application of veterans' benefits law to the particular facts of a veteran's case."  *Id.*

The Veterans Court did not commit legal error in denying Mr. Duncan's petition for a writ of mandamus.  The court recognized that it had the authority to issue a writ of mandamus pursuant to the All Writs Act, 28 U.S.C. § 1651(a).  Appx16.  The Veterans Court also correctly identified the three conditions that must be met before a writ of mandamus may be issued:  "(1) The petitioner must show the lack of adequate alternative means to obtain the desired relief; (2) the petitioner must show a clear and indisputable right to the writ; and (3) the Court must be convinced that issuing the writ is warranted."  Appx16-Appx17 (citing *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380-81 (2004)).  The Veterans Court then applied the *TRAC* factors to evaluate Mr. Duncan's petition based on his

14

allegation of unreasonable delay, as required by *Martin*, 891 F.3d at 1344-45, 1348. Appx17-18. This is not a case such as *Mote*, No. 19-2367, 2020 WL 5755475 at **1, 6, discussed previously, which involved the legal question of whether the Veterans Court was required to undertake the TRAC analysis. Here, the Veterans Court did undertake that analysis and the only question raised – outside of mootness – concerns fact finding within the TRAC analysis, as outlined below.

With respect to the first factor, "applying a 'rule of reason' to the actions at issue," the Veterans Court concluded that VA's action had not been unreasonable and that "the first *TRAC* factor weighs strongly against issuance of a writ." Appx17.

Regarding the second factor, which concerns statutory timetables, the court explained that "Congress has not provided a schedule for VA adjudication" and has "created the VA system to be a multistep process." *Id.* The court found that "[t]he delays in this case are closely tied to the multistep process Congress has put into place." *Id.*

With respect to the third and fifth *TRAC* factors,[4] which focus on the veteran's interests, the court explained that the "petition here deals with the

---

[4] The Veterans Court correctly identified the fifth factor in its listing of all six *TRAC* factors, but labeled it as the fourth factor (and the fourth factor as the fifth

15

petitioner's health and welfare," which "are significant considerations and weigh strongly in the petitioner's favor." *Id.*

The court found that the fourth factor, which deals with the effect granting a writ would have on VA's other activities, such as processing other veteran's claims, "weighs against issuing a writ." *Id.*

Regarding the sixth factor, which "makes clear that intentional agency misconduct is not required to justify a writ," the Veterans Court found that "[t]he absence of such intentional misconduct plays no role in the [c]ourt's decision on this matter." Appx18.

The Veterans Court observed that "the reality is that there is 'no hard and fast rule with respect to when delay becomes unreasonable.'" *Id.* (quoting *Martin*, 891 F.3d at 1346). "After considering all the facts through the lens of *TRAC*, the [c]ourt conclude[d] that petitioner has failed to demonstrate that any delay here has been so egregious to warrant the issuance of a writ" and denied his petition. *Id.* This Court lacks jurisdiction to review the conclusions the Veterans Court reached based on its application of *TRAC* to the facts of Mr. Duncan's case. 38 U.S.C. § 7292(d)(2). Indeed, the discussion of the TRAC factors underscores that Mr.

---

factor) in its analysis. Appx17. We will refer to the factors by the order identified in *TRAC* and *Martin*.

Duncan's appeal is moot. Either way, the Court should dismiss Mr. Duncan's appeal.

3. Did the Court of Appeals for Veterans Claims decide constitutional issues? If so, what are your arguments concerning those issues?

No. Consistent with this Court's guidance in *Martin*, because the Veterans Court found that the delay was not unreasonable after applying the *TRAC* analysis, *see* Appx18, it did not separately analyze the due process claim based on that same delay. 891 F.3d at 1348-49.

Although Mr. Duncan responds "no" to this question, he argues that the VA's alleged failure "to apply established law to" his "challenge to the validity of the debt asserted against him, prevented his appeal from going forward, deprived him of fundamental fairness goi[n]g forward[,] and condem[n]ed him to a ping-pong effect of back and forth remands of his waiver appeal . . . [i]n violation of his statutory rights under 38 U.S.C. [§] 5302(a)" and his constitutional rights pursuant to the Fifth Amendment. Cl. Br. 4-5. Mr. Duncan also alleges that "[t]he VA failed to acknowledge repeatedly raised issues of the validity of the debt," that the VA did not submit certain evidence or his response to the statement of the case to either the board, or to the centralized Commission on Waivers and Compromises, that the VA "misrepresented the U.S. Treasury Department" resulting in additional remand, and that these actions caused unreasonable delay and constituted due process violations. Cl. Br. 6.

To the extent Mr. Duncan puts a due process label on his contention that the Veterans Court erred in denying his petition, his characterization of the issue as constitutional in nature would not confer jurisdiction on the Court that it otherwise lacks. *Helfer v. West*, 174 F.3d 1332, 1335 (Fed. Cir. 1999).

If the Court determines that Mr. Duncan's appeal is not moot, and that he has sufficiently raised a constitutional argument, the Court should affirm the Veterans Court's order. The only issue on appeal is whether the Veterans Court abused its discretion or committed legal error in denying Mr. Duncan's petition for a writ of mandamus. To obtain such "a drastic and extraordinary remedy," Mr. Duncan must establish a lack of adequate alternative means to obtain the desired relief and a "clear and indisputable" right to the writ, and the issuing court, in the exercise of its discretion, must be convinced that the writ is appropriate under the circumstances. *Cheney*, 542 U.S. at 380-81 (internal quotations and citations omitted).

Mr. Duncan has failed to demonstrate that he will be unable to appeal issues relating to the validity of the debt and his request for a waiver through a direct appeal, or that his challenges would not be considered should he file such an appeal. *See Guillory v. Shinseki*, 603 F.3d 981, 987-88 (Fed. Cir. 2010) ("[H]ere there is no due process issue because . . . the statutes and regulations provide an adequate remedy for any error that occurred in prior proceedings."). Although the

18

Veterans Court recognized that the delay Mr. Duncan experienced was frustrating, Appx17, "extraordinary writs cannot be used as substitutes for appeals, even though hardship may result from delay." *Lamb*, 284 F.3d at 1384 (quoting *Bankers Life & Cas. Co. v. Holland*, 346 U.S. 379, 383 (1953)).

Nor has Mr. Duncan cited precedent or presented any convincing argument entitling him to the relief that he seeks. *See Buholtz v. Snyder*, 680 F. App'x 922, 925 (Fed. Cir. 2017) (non-precedential) ("[N]o precedent cited to us, or of which we are aware, establishes that the delays at issue here clearly violate [appellant's] due process rights, as would be required for him to be entitled to relief under the applicable mandamus standards.") (citing *Johnson v. Shinseki*, 549 F. App'x 994, 997 (Fed. Cir. 2013) (non-precedential) (rejecting delay-based due process contention); *Woznick v. Shinseki*, 492 F. App'x 100, 102 (Fed. Cir. 2012) (non-precedential) (similar)).

Similarly, Mr. Duncan has not established that the delay was so long or unreasonable that it amounted to a due process violation. In particular, while a "delay can be so unreasonable as to deny due process, such as when it is inordinately long or when a recipient demonstrates immediate financial need[,]" *Isaacs v. Bowen*, 865 F.2d 468, 477 (2d Cir. 1989), Mr. Duncan has made no such showing.

Mr. Duncan asserted that the delay is unreasonable due to various asserted failures of VA. Cl. Br. 6. But it appears that the delay in deciding Mr. Duncan's request for a waiver of recovery of an overpayment generally was related to efforts by the board to ensure that the record is adequately developed, and that all necessary determinations are made initially by the agency of original jurisdiction, prior to the board issuing final determinations concerning those issues.

In particular, the board explained that Mr. Duncan had raised the issue of the proper creation of the debt, including a dispute as to the amount owed and the issue of sole administrative error, and that resolution of those issues must precede any further appellate review by the board on the waiver claim. *See* Appx13-14. As the Veterans Court explained, the delays were "closely tied to the multistep process Congress has put into place" for VA's adjudicatory system. Appx17.

Mr. Duncan's arguments do not undermine the soundness of that conclusion, nor has he demonstrated that the delay was so long as to constitute a due process violation. *See Terio v. Nicholson*, 2005 U.S. App. LEXIS 26915 (Fed. Cir. 2005) (non-precedential) (affirming denial of a writ of mandamus where appellant claimed due process violation related to "unreasonable delays" of claims pending for over 14 years where remands were necessary to ensure VA met its duty to assist and to provide a requested hearing).

4.   Did the Court of Appeals for Veterans Claims fail to decide any other issue correctly?  If so, how?

No.  In response to this question, Mr. Duncan argues that the Veterans Court failed to decide the first, second, third, fourth, and sixth *TRAC* factors correctly. Cl. Br. 9.  To the extent the Court determines that Mr. Duncan's should not be dismissed because it is moot, and that it possesses jurisdiction with respect to any of those issues, the Court should affirm the Veterans Court's decision because Mr. Duncan fails to establish that the Veterans Court committed legal error or abused its discretion.

With respect to the first factor, and presumably the second factor, Mr. Duncan argues that the Veterans Court failed to address or consider the statutory instruction that cases on remand by the Veterans Court or the board receive expedited treatment.  Cl. Br. 3 (citing 38 U.S.C. §§ 5109B, 7112).  That does not establish, however, that the Veterans Court failed to consider the requirement that remanded claims receive expedited treatment.  "It is well-established that a litigant's right to have all issues fully considered and ruled on by the appellate court does not equate to a right to a full written opinion on every issue raised." *Bernklau v. Principi*, 291 F.3d 795, 801 (Fed. Cir. 2002) (quotations and citations omitted).

Additionally, the Veterans Court's analysis demonstrates that it was well aware that Mr. Duncan's case had been remanded by the board, given that the

court recognized that the matter had been returned to the regional office about four months earlier. Appx16. The Veterans Court's reference to four months earlier appears to refer to a December 2019 letter, in which the board informed petitioner that his claims file was returned to the regional office for compliance with the January 2019 remand order, and not to the remand order itself. *See* Appx16-17.

Mr. Duncan argues that VA was not required by the Veterans Court to respond to his petition, and the record does not reflect any reason provided by the VA why his remanded claim had not been processed in more than a year since the remand order was issued. Cl. Br. 7. Mr. Duncan cites *Scott v. Shinseki*, 2013 U.S. App. Vet. Claims LEXIS 1392 (Aug. 21, 2013), presumably to support the idea that a one-and-a-half-year delay allegedly would be unreasonable. Cl. Br. 7. *Scott* was a non-precedential decision and it pre-dates the Court's adoption of the *TRAC* factors in *Martin*. Moreover, in that case, the Veterans Court deferred petitioner's request for extraordinary relief and required the Secretary to provide a status update, stating that the court was "compelled to monitor the Secretary to ensure timely processing" of the claims, "[b]ecause significant time has passed without *any action*" by the regional office. *Scott*, 2013 U.S. App. Vet. Claims LEXIS 1392 at 4-5 (emphasis added).

In contrast, the Veterans Court in this case expressly concluded that this was "not a situation of 'complete inaction by the VA,'" something the Federal Circuit

has indicated is important in assessing the 'rule of reason.'" Appx17 (citing *Martin*, 891 F.3d at 1345-46). As the Court explained in *Martin*, the "'rule of reason' inquiry is best left to the discretion of the Veterans Court." 891 F.3d at 1346. Mr. Duncan has not demonstrated that the Veterans Court abused its discretion.

With respect to the third factor, although Mr. Duncan argues that the Veterans Court failed to decide that factor correctly in response to the informal brief question, he does not appear to advance any specific arguments with respect to that factor. Cl. Br. 9. Additionally, the Veterans Court found that the third factor "weigh[s] strongly in the petitioner's favor." Appx17.

With respect to the fourth factor, Mr. Duncan points to the Veterans Court's statements that "VA is processing petitioner's claim in a system that generally requires it to act on claims in the order they are received (assuming a claim is not expedited by this Court)" and that "[i]f the Court were to grant the writ, petitioner would essentially jump to the head of the line[.]" Appx18; Cl. Br. 7. Mr. Duncan argues that the Veterans Court "refuses to acknowledge the statutory instruction that cases on remand by the Veterans Court receive expedited treatment . . . ." Cl. Br. 7 (citing 38 U.S.C. § 5302(a)). But as noted above with respect to the first factor, the Veterans Court is not required to provide "a full written opinion on every issue raised." *Bernklau*, 291 F.3d at 801. And as also discussed above, the

23

Veterans Court was aware that Mr. Duncan's claim had been remanded. Further, in the passage Mr. Duncan cites, the court appears to have been describing the system "generally" and explaining that granting the writ would have put him at "the head of the line," which as the Veterans Court observed, is "a problem the Federal Circuit has warned against." Appx18 (citing *Ebanks v. Shulkin*, 877 F.3d 1037, 1040 (Fed. Cir. 2017)).

Concerning the sixth factor, Mr. Duncan argues that the Veterans Court failed to consider the proper legal standard in its analysis of the factor. Cl. Br. 4. He seems to compare the Veterans Court's order stating, "the sixth *TRAC* factor makes clear that intentional agency misconduct is not required to justify a writ," SAppx3, with language, presumably from *Martin*, that "the court need not find 'any impropriety lurking behind agency lassitude' in order to hold that agency action is unreasonably delayed[.]" 891 F.3d at 1345 (quoting *TRAC*, 750 F.2d at 80). Cl. Br. 4. Although the Veterans Court's used different language, the two statements essentially mean the same thing, and Mr. Duncan's argument provides no basis for challenging the Veterans Court's decision. Mr. Duncan also argues that "[a]pplying the 'Rule of Reason', to the actions at issue, makes it incumbent on the Appellant, although not required under the Sixth TRAC Factor, to demonstrate intentional improper conduct by the agency to justify a writ." Cl. Br. 4. Mr. Duncan's argument is not sufficiently supported or explained, and it

24

conflicts with the Veterans Court's acknowledgement that such misconduct does not need to be shown.

Mr. Duncan relatedly appears to challenge the Veterans Court's factual determination, under the sixth factor, that there was no intentional misconduct. Cl. Br. 4-6. This factual matter falls outside the Court's jurisdiction. 38 U.S.C. § 7292(d)(2); *see Beasley*, 709 F.3d at 1158. Furthermore, as discussed above, the length of time to finally determine Mr. Duncan's request for a waiver of recovery of an overpayment was generally related to efforts by the board to ensure that the record was adequately developed and that all necessary determinations were made by the agency of original jurisdiction. In any event, Mr. Duncan has not established intentional misconduct and the Veterans Court expressly indicated that the absence of misconduct was not a basis for its decision to deny Mr. Duncan's petition. Appx18.

5. <u>Are there other arguments you wish to make? If so, what are the arguments?</u>

In response to this question, Mr. Duncan argues that the Veterans Court failed to require the VA to respond to his mandamus claims under Rule 21(d) of the Veterans Court's Rules of Practice and Procedure. Cl. Br. 9; *see also* Cl. Br. 7. Rule 21 addresses petitions for extraordinary relief. Rule 21(d) provides that "[u]nless the Court concludes that the petition should be denied, the Court will order the respondent(s) to file an answer to the petition within a fixed time."

Therefore, a response to a petition for extraordinary relief is not required if the Veterans Court determines that the petition should be denied. And to the extent Mr. Duncan is challenging the Veterans Court's application of Rule 21(d) to the facts of this case, this Court lacks jurisdiction to address that issue. 38 U.S.C. § 7292(d)(2).

6.  <u>What action do you want the Court to take in this case?</u>

The Court should dismiss this appeal because it is moot. If the Court does not do so, the appeal should be dismissed for lack of jurisdiction or, in the alternative, the Veterans Court's order and judgment should be affirmed.

7.  <u>Do you want to argue before the Court in person?</u>

No.

<u>CONCLUSION</u>

For these reasons, we respectfully request that the Court dismiss this appeal or, in the alternative, affirm the Veterans Court's order.

Respectfully submitted,

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

/s/ *L. Misha Preheim*
By *Steven J. Gillingham*
L. MISHA PREHEIM
Assistant Director

/s/ *Richard P. Schroeder*
RICHARD P. SCHROEDER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
PO Box 480
Ben Franklin Station
Washington, DC 20044
Tel: (202) 305-7788
email: Richard.Schroeder@usdoj.gov

October 15, 2020                    Attorneys for Respondent-Appellee

# SUPPLEMENTAL APPENDIX

## Supplemental Appendix

Document                                                                                                    Page

Judgment (June 8, 2020) ...................................................................................1

Veterans Court's Docket Sheet .........................................................................2

Veterans Court's Order (May 15, 2020) ...........................................................6

Letter Enclosing Supplemental Statement of the Case (Sept. 25, 2020) ....................8

Supplemental Statement of the Case (Sept. 25, 2020)...............................................10

Memorandum re: Validity of Debit Audit (Sept. 22, 2020). ...................................16

*Not Published*

**UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS**

NO: 20-2116

GARY B. DUNCAN, PETITIONER,

V.

ROBERT L. WILKIE,
SECRETARY OF VETERANS AFFAIRS, RESPONDENT.

**JUDGMENT**

The Court has issued a decision in this case, and has acted on a motion under Rule 35 of the Court's Rules of Practice and Procedure.

Under Rule 36, judgment is entered and effective this date.

Dated: June 8, 2020

FOR THE COURT:

GREGORY O. BLOCK
Clerk of the Court

By: /s/ Anthony R. Wilson
Deputy Clerk

Copies to:

Gary B. Duncan

VA General Counsel (027)

**SAppx1**

**General Docket**
**United States Court of Appeals for Veterans Claims**

| | |
|---|---|
| **Case Number:**20-2116 | **Docketed:** 03/24/2020 |
| Gary B. Duncan v. Robert L. Wilkie | |
| **Appeal From:** Department of Veteran Affairs | |
| **Fee Status:** dfh | |

**Case Type Information:**
   **1)** Petition
   **2)** -
   **3)** -

**Prior Cases:**
  None

**Current Cases:**
  None

---

Gary B. Duncan
      Petitioner

Gary B. Duncan
[NTC]
GDC 443805
Riverbend Correctional Facility
196 Laying Farm Road
Milledgeville, GA 31061

v.

Robert L. Wilkie, Secretary of Veterans Affairs
      Respondent

OGC-ICM6, Non-Attorney
Direct: 202-632-6952
[COR NTC]
Department of Veterans Affairs, OGC (027)
810 Vermont Avenue, N.W.
Washington, DC 20420

**SAppx2**

Gary B. Duncan,

     Petitioner

v.

Robert L. Wilkie, Secretary of Veterans Affairs,

     Respondent

**SAppx3**

| | | |
|---|---|---|
| 03/24/2020 | ☐ 🔒 0 pg, 0 KB | Petition for extraordinary relief (KS) |
| 03/25/2020 | ☐ ▤ 2 pg, 58.12 KB | RECEIVED: Correspondence from Petitioner - COS 4/1/2020 (SEY) |
| 03/26/2020 | ☐ 🔒 0 pg, 0 KB | Notice of Docketing for petition for extraordinary relief; Filing Fee or Dec of Financial Hardship w/in 14 days (KS) |
| 04/07/2020 | ☐ ▤ 2 pg, 48.59 KB | Declaration of Financial Hardship (KS) |
| 04/07/2020 | ☐ | Assigned case to Judge Allen (PTD) |
| 04/21/2020 | ☐ ▤ 3 pg, 91.69 KB | Order that the petition for extraordinary relief is denied (ALLEN) (ARW) |
| 05/05/2020 | ☐ ▤ 8 pg, 491.12 KB | Mot of Petitioner for reconsideration and in the alternative by Panel (KEM) |
| 05/07/2020 | ☐ | Mot of Petitioner for review en banc (PLEASE IGNORE; WRONG CASE) (KEM) |
| 05/15/2020 | ☐ ▤ 2 pg, 76.39 KB | ORDERED, by the single judge, that the motion for reconsideration is denied. It is further ORDERED, by the panel, that the motion for panel decision is granted. It is further ORDERED, by the panel, that the single-judge order remains the decision of the Court. (GREENBERG, ALLEN and FALVEY) (ARW) |
| 06/08/2020 | ☐ ▤ 1 pg, 8.72 KB | Judgment (ARW) |
| 07/02/2020 | ☐ ▤ 2 pg, 62.47 KB | RECEIVED: Correspondence from appellant received 7/6/20 (ARW) |
| 07/21/2020 | ☐ ▤ 3 pg, 110.36 KB | Petitioner's Notice of Appeal to the U.S. Court of Appeals for the Federal Circuit (ARW) |
| 07/29/2020 | ☐ ▤ 1 pg, 9.31 KB | Petitioner's Notice of Appeal transmitted to U.S. Court of Appeals for the Federal Circuit (ARW) |
| 07/31/2020 | ☐ ▤ 3 pg, 169.6 KB | RECEIVED: Notice of Docketing from the U.S. Court of Appeals for the Federal Circuit dated 7/31/20; (20-2099) (ARW) |

**SAppx4**

Clear All

◉ **Documents and Docket Summary**
○ **Documents Only**

☐ **Include Page Numbers**

**Selected Pages:** 0        **Selected Size:** 0 KB
**Totals reflect accessible documents only and do not include unauthorized restricted documents.**

View Selected

**SAppx5**

*Not published*
*NON-PRECEDENTIAL*

# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 20-2116

GARY B. DUNCAN,                                                 PETITIONER,

   V.

ROBERT L. WILKIE,
SECRETARY OF VETERANS AFFAIRS,                       RESPONDENT.

Before GREENBERG, ALLEN, and FALVEY, *Judges*.

## O R D E R

*Note: Pursuant to U.S. Vet. App. R. 30(a),*
*this action may not be cited as precedent.*

In an April 21, 2020, order, the Court denied the petitioner's request for extraordinary relief in the nature of a writ of mandamus. On May 5, 2020, the petitioner filed a timely motion for reconsideration or, in the alternative, panel review. The motion for a decision by a panel will be granted.

Based on review of the pleadings, it is the decision of the panel that the petitioner fails to demonstrate that 1) the single-judge order overlooked or misunderstood a fact or point of law prejudicial to the outcome of the petition, 2) there is any conflict with precedential decisions of the Court, or 3) the petition otherwise raises an issue warranting a precedential decision. U.S. VET. APP. R. 35(e); *see also Frankel v. Derwinski*, 1 Vet.App. 23, 25-26 (1990).

Absent further motion by the parties or order by the Court, judgment will enter on the underlying single-judge order in accordance with Rules 35 and 36 of the Court's Rules of Practice and Procedure.

Upon consideration of the foregoing, it is

ORDERED, by the single judge, that the motion for reconsideration is denied. It is further

ORDERED, by the panel, that the motion for panel decision is granted. It is further

ORDERED, by the panel, that the single-judge order remains the decision of the Court.

DATED: May 15, 2020                                        PER CURIAM.

Copies to:

Gary B. Duncan

VA General Counsel (027)

2

**DEPARTMENT OF VETERANS AFFAIRS**
**Regional Office**
**Bishop Henry Whipple Fed. Bldg.**
**1 Federal Drive Fort Snelling**
**St. Paul MN  55111-4050**



September 25, 2020

Gary Duncan
Riverbend Correctional Facility
GDC 443805
196 Laying Farm Rd
Milledgeville, GA 31061

In Reply Refer to: 335/24F
File #: ███████
Gary B Duncan

Dear Gary Duncan,

Upon direction from the Board of Veterans Appeals (BVA), we reviewed your records, and we did not change our decision. Your claim for a waiver of the debt remains denied.  Therefore, we have enclosed a Supplemental Statement of the Case (SSOC).  This letter defines a SSOC, tells what you should do and what happens next.

## What Is A SSOC?

An SSOC is an explanation of the evidence we used to make the decision.  It includes a summary of the new evidence you submitted.

## What You Should Do

You should read the enclosed SSOC carefully.  The facts as stated in the SSOC are important.

If there is any missing or incorrect information in the SSOC, use a separate piece of paper to tell us, in your own words, why you think we should change our decision.  Your response should include:

- what facts in the statement you disagree with, and /or
- what error you believe we made in the decision.

## What Happens Next

You have 30 days to respond if you feel it is necessary.  If you respond, we will review our decision, taking into account any new information.

If you don't respond or we don't change our decision, we will submit your Form 9 Appeal to the Board of Veterans' Appeals (BVA) for their review.

BVA will ask for your file when they are ready to review your appeal.  You will receive a copy of BVA's decision.  Please be patient because this process may be very lengthy.

**SAppx8**

2.

████████
Duncan, Gary


If you have questions about this letter, call us toll free at 1-800-827-1000.  Our TDD number for the hearing impaired is 1-800-829-4833.


Sincerely yours,

*V. Anderson*

V. Anderson
Chairperson, Committee on Waivers and Compromises

Enclosure:    Supplemental Statement of the Case
              VA Modernized Decision Review System SOC/SSOC Opt-In Fact Sheet
              VA Form 1082
CC: Patrick C. Dicarlo, Attorney



**DEPARTMENT OF VETERANS AFFAIRS**
**Regional Office**
**Bishop Henry Whipple Federal Building**
**1 Federal Drive**
**St. Paul, MN  55111-4050**

September 25, 2020

**In Reply Refer To:**
CSS ▮▮▮▮▮▮
335/24COWC

# SUPPLEMENTAL STATEMENT OF THE CASE

**IN THE APPEAL**
**OF**

## Gary Duncan

**FROM THE DECISION OF THE**
**DEPARTMENT OF VETERANS AFFAIRS**

**<u>NOTICE TO APPELLANT</u>:**

This is not a decision on the appeal you have initiated.  It is a "Supplemental Statement of the Case" which the law requires us to furnish to help you in completing your appeal.

Please read the forwarding letter carefully, as well as the instructions on the enclosed appeal form.  These explain your appeal rights and tell you what you must do to complete your appeal.

**<u>ISSUE</u>:**  Waiver request for $11,490.90

**FL 1-25a**
**May 1990 (R)  335/24**

SAppx10

2.

Duncan, Gary
████████

**ISSUE:**

Entitlement to waiver of the recovery of an overpayment of VA Compensation benefits in the amount of $11,490.90.

**SUMMARY OF EVIDENCE AND ADJUDICATION ACTIONS:**

Remand from the Board of Veterans Appeals dated January 9, 2019.   Matter remanded by BVA to VA to adjudicate the issue of whether the overpayment was properly created, to include the amount of debt owed and the raised matter of sole administrative error and consider the waiver issue, if appropriate (i.e., if creation of the overpayment debt was valid).

3rd party evidence received from the Bureau of Prisons dated January 19, 2010, showing the Veteran's incarceration of  December 8, 1987 which VA counts from the 61st day of incarceration (February 7, 1988).

Notification letter dated January 20, 2010, proposing to reduce the Veteran's Compensation benefits to half of 10% effective February 7, 1988 which is the 61st day of incarceration from December 8, 1987, because he was convicted of a Felony

Award action on April 13, 2010, reducing your Compensation benefits to half of 10% effective February 7, 1988 which is the, (61st day of incarceration).

Notification letter dated April 13, 2010, advising you of VA's action to reduce your Compensation benefits effective February 7, 1988, due to your incarceration.

Notification letter from the Debt Management Center (DMC) sent April 30, 2010, notifying you of your debt of $11,490.90 and advising you of your rights and obligations.  This correspondence advised you that your right to request a waiver of the debt must be made within 180 days from the date of the DMC notification letter.

Your waiver request received on May 21, 2010.

Waiver denial decision for $11,490.90 on June 18, 2010.  Waiver was denied on the elements.

Notice of Disagreement NOD received on August 16, 2010.

Statement of the Case dated June 14, 2011, affirming the denial of $11,490.90.

VA Form 9, Appeal to Board of Veterans Appeals, received on August 9, 2011 for debt amount of $11,490.90.

Supplemental Statement of Case, October 14, 2011 upholding denial decision of $11,490.90 and letting Veteran know debt reduced by $32.00 after review of account and credit to his account of $27.47

VA Form 8, Certification of Appeal to the Board of Veteran's Appeals, certified on January 18, 2012 for the debt amount of $11,458.90 (original debt of $11,490.90)

BVA remanded the case to conduct another audit and explain validity of debt and provide another Supplemental Statement of the Case should the benefit sought on appeal remain denied.

Correspondence from Attorney Patrick C DiCarlo, August 25, 2014, contending that the Veteran contacted the VA via telephone regarding his incarceration in March 1988 and also requested an address change to his mother's address in late 1986 or early 1987.

Supplemental Statement of the Case from the Philadelphia Regional Office, November 3, 2018 upholds validity of the debt.

**SAppx11**

3.

Duncan, Gary
██████████

Supplemental Statement of the Case, November 14, 2018, from Regional Office 335 Committee on Waivers and Compromises upholding denial of $11,490.90 debt.

Board of Veterans Appeals Remand, January 9, 2019 to research validity of debt and issue SSOC denial upheld.

Award action, September 21, 2020 adding $2.00 of Cost of Living Allowance to award effective April 1, 1992.

Notification Letter to Veteran dated September 22, 2020 notifying him of credit of $2.00 towards his debt.

VA Memo dated September 22, 2020 upholding validity of incarceration debt of $11,490.90

4.

Duncan, Gary



**PERTINENT LAW; REGULATIONS:**

Recovery of overpayments of any benefits made under laws administered by the Department of Veterans Affairs shall be waived if there is no indication of fraud, misrepresentation, or bad faith on the part of the person or persons having an interest in obtaining the waiver and recovery of the indebtedness from the payee who received such benefits would be against equity and good conscience. (38 USC 5302(a) and (c); 38 CFR 1.963)

The standard "Equity and Good Conscience" will be applied when the facts and circumstances in a particular case indicate a need for reasonableness and moderation in the exercise of the Government's rights. The decision reached should not be unduly favorable or adverse to either side. The phrase "equity and good conscience" means arriving at a fair decision between the obligor and the Government. In making this determination, consideration will be given to the following elements, which are not intended to be all - inclusive.

    1. Fault of debtor. Where actions of the debtor contribute to creation of the debt.

    2. Balancing of faults. Weighing fault of debtor against Department of Veterans Affairs fault.

    3. Undue hardship. Whether collection would deprive debtor or family of basic necessities.

    4. Defeat the purpose. Whether withholding of benefits or recovery would nullify the objective for which benefits were intended.

    5. Unjust enrichment. Failure to make restitution would result in unfair gain to the debtor.

    6. Changing position to one's detriment. Reliance on Department of Veterans Affairs benefits results in relinquishment of a valuable right or incurrence of a legal obligation.

In applying this single standard for all areas of indebtedness, the following elements will be considered, any one of which, if found, will preclude the granting of waiver:

    1. Fraud or misrepresentation of a material fact.

    2. Bad Faith. This term generally describes unfair or deceptive dealing buy one who seeks to gain thereby at another's expense. Thus, a debtor's conduct in connection with a debt arising from participation in a VA benefits/services program exhibits bad faith if such conduct, although no undertaken with actual fraudulent intent, is undertaken with intent to seek an unfair advantage, with knowledge of the likely consequences, and results in a loss to the government. (38 CFR 1.965)

**38 USC Section 5107. Burden of proof; benefit of the doubt**

    (a) Except when otherwise provided by the Secretary in accordance with the provisions of this title, a person who submits a claim for benefits under a law administered by the Secretary shall have the burden of submitting evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded. The Secretary shall assist such a claimant in developing the facts pertinent to the claim. Such assistance shall include requesting information as described in Section 5106 of this title.

4.

Duncan, Gary



**DECISION**:

The decision to deny your waiver request for $11,490.90 is affirmed.

**REASONS FOR DECISION**:

After a review of your file, new evidence was found to change our decision.  A Cost Of Living Adjustment (COLA) for Fiscal Year 1990 of $2.00 was credited to you.  The validity and creation of the debt was upheld.

38 CFR 3.665 requires that the payment of Department of Veterans Affairs (VA) compensation benefits rated at 10% disabling are reduced to half of 10% after the 61st day of incarceration following a conviction of a felony.  As February 7, 1988, was the day after the 61st day of your incarceration, you were entitled to the half of 10% compensation rate from February 7, 1988 to November 30, 2008, award adjustment date of April 13, 2010.  Because you were paid at the full 10% compensation rate from February 7, 1988 to November 30, 2008, you received funds for which you were not eligible.  Because you received funds for which you were not eligible, the Committee on Waivers and Compromises has found the element of unjust enrichment.

Since you are still incarcerated and the facility provides for your basic needs, withholding your compensation benefits for debt repayment would not defeat the purpose of those benefits.

Upon review of your Financial Status Report, financial hardship is not shown as the facility provides for your basic needs due to your incarceration.

The Committee on Waivers and Compromises determined you are at fault for the creation of the debt as you were incarcerated after a conviction of a felony.  38 CFR 3.665 requires that the payment of Department of Veterans Affairs (VA) compensation benefits be reduced to the amount payable for a disability evaluated as half of 10% disabling for a combined disability evaluation of 10% after the 61st day of incarceration following a conviction of a felony.

Change of position is not considered.

The current balance of the indebtedness is $3,987.93.

5.

Duncan, Gary

██████████

REPORTING MEMBER: /s/ T Skaar

DATE:  September 25, 2020

*V. Anderson*

CHAIRMAN:   /s/ V Anderson

DATE: September 25, 2020

trygve r. skaar 663945

Digitally signed by trygve r. skaar 663945
Date: 2020.09.25 15:23:55 -05'00'

**September 22, 2020**

| | |
|---|---|
| Director | In Reply Refer To: |
| Office of Finance (004) | 335/PE |
| Department of Veterans Affairs | CSS: ▮▮▮▮▮ |
| Central Office | Duncan, Gary B |
| 810 Vermont Ave. NW | |
| Washington, DC 20420 | |

**SUBJECT**:  **Validity of Debt Audit per Remand Dated January 9, 2019**

**ISSUE UNDER REVIEW: Debt caused by the Veteran's incarceration adjustment.**

**EVIDENCE:**

- VA Notification Letter dated January 20, 2010
- Correspondence, received on January 25, 2010
- VA Form 21-4138 Statement in Support of Claim, received on January 25, 2010
- Prison Information received on January 19, 2010
- 61st Day Calculations received on January 19, 2010
- Award Print date April 13, 2010
- VA Notification Letter dated April 13, 2010
- Audit/Payment Amounts, received August 26, 2011
- Review of Electronic Claim Folder.

**DECISION:**

The debt for the Veteran's incarceration was $12,843.90.

The Veteran stopped receiving his payment on May 1, 2009 for an unknown reason. When we processed the Veterans incarceration adjustment on April 13, 2010, resuming his award effective April 1, 2010. Resuming his payment created a $1,353.00 retroactive payment. The award action taken on April 13, 2010 that created a debt of $11,490.90, included this retroactive payment to reduce the debt that was created by his incarceration. The debt is validated.

During the review of his file it was found that we did not apply the Omnibus Budget Reconciliation Act of 1990, deferring the December 1, 1990. We corrected this error which amounted to a retroactive payment of $2.00.

**SAppx16**

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF SERVICE</u>

**Case Number**   2020-2099

**Short Case Caption**   Duncan v. Wilkie

**NOTE:** Proof of service is only required when the rules specify that service must be accomplished outside the court's electronic filing system.  See Fed. R. App. P. 25(d); Fed. Cir. R. 25(e).  Attach additional pages as needed.

I certify that I served a copy of the foregoing filing on _____ 10/16/20 _____

by    ☑   U.S. Mail    ☐    Hand Delivery    ☐ Email    ☐ Facsimile
      ☐   Other: _____

on the below individuals at the following locations.

| Person Served | Service Location (Address, Facsimile, Email) |
|---|---|
| Gary B. Duncan<br>GDC 443805 | Riverbend Correctional Facility<br>196 Laying Farm Road<br>Milledgeville, GA 31061 |
|  |  |
|  |  |
|  |  |
|  |  |

☐    Additional pages attached.

Date: ____ 10/16/20 ____

Signature:   /s/   Thee Matthews

Name:       Thee Matthews