NOTE:  This disposition is nonprecedential.

# United States Court of Appeals
# for the Federal Circuit

---

**GARY B. DUNCAN,**
*Claimant-Appellant*

v.

**ROBERT WILKIE, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2020-2099

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 20-2116, Judge Michael P. Allen.

---

Decided:  January 13, 2021

---

GARY B. DUNCAN, Milledgeville, GA, pro se.

RICHARD PAUL SCHROEDER, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent-appellee.  Also represented by JEFFREY B. CLARK, ROBERT EDWARD KIRSCHMAN, JR., LOREN MISHA PREHEIM.

---

Before PROST, *Chief Judge*, CLEVENGER and DYK, *Circuit Judges*.

PER CURIAM.

Veteran Gary B. Duncan appeals the denial of his mandamus petition by the Court of Appeals for Veterans Claims ("Veterans Court"). Mr. Duncan had asked the Veterans Court to compel the Department of Veterans Affairs ("VA") to decide his benefits-overpayment claim. In support of mandamus, Mr. Duncan argued that the VA had unreasonably delayed in making its determination. The Veterans Court found no unreasonable delay and denied mandamus. During the pendency of this appeal from that denial, the relevant regional office ("RO") of the VA decided part, but not all, of Mr. Duncan's claim. Although the VA insists that this partial decision moots Mr. Duncan's petition, we are not convinced. For the reasons discussed below, we vacate the Veterans Court's order denying mandamus and remand to the Veterans Court for reconsideration of the mandamus petition in light of the RO's partial determination.

I

This appeal is part of a now ten-year dispute over whether the VA overpaid Mr. Duncan's service-connected disability benefits from 1988 to 2009. The VA says yes, and further insists that its overpayments were exclusively Mr. Duncan's fault—and so it wants them back, to the tune of nearly twelve thousand dollars. Mr. Duncan insists that any overpayment was the VA's mistake and that he shouldn't have to repay two decades of disability benefits.

Mr. Duncan served on active duty from 1976 to 1979. Since discharge, he has received service-connected benefits at a ten percent disability rating. But Mr. Duncan has also been incarcerated since December 8, 1987. Under 38 U.S.C. § 5313 and 38 C.F.R. § 3.665, while incarcerated he is entitled to only half benefits, the reduction of which

should have started on February 7, 1988, the sixty-first day of his incarceration.  Nonetheless, the VA paid him full benefits for over two decades.  But in 2009, the VA finally notified Mr. Duncan that his compensation benefits were reduced due to his incarceration.  A few months later, the VA clarified that the reduction was retroactive: he now owed half his paid benefits back, as a debt.  Since then, the VA has been withholding Mr. Duncan's benefit payments and applying them toward his supposed balance.  For his part, Mr. Duncan explains (and no factfinder has so far found to the contrary) that he had continually informed the VA that he was incarcerated—including by providing numerous changes of address corresponding to various prisons.

Mr. Duncan asked for a waiver of the overpayment debt; his request was denied in June 2010.  That August, he submitted a notice of disagreement in response.  Mr. Duncan then raised an argument as to whether the overpayment debt was valid at all.  The validity question was twofold: Mr. Duncan (1) contested the amount of the debt and (2) argued "administrative error" under 38 U.S.C. § 5112(b)(10) and 38 C.F.R. § 3.500(b)(2)—i.e., that the overpayment was solely the VA's mistake, as he'd repeatedly told the VA he was incarcerated yet they'd paid him in full anyway.  If Mr. Duncan were correct about administrative error, he would not need a waiver: there would be no debt at all, as any adjustment to his benefits would be prospective only.[1]

The case went on for years, including at least one trip to the Veterans Court and several remands by the Board of Veterans' Appeals ("Board") along the way.  Eventually, on

---

[1]     The effective date of a reduction of award, in the event of "an erroneous award based solely on administrative error," is the "date of last payment."   38 U.S.C. § 5112(b)(10); 38 C.F.R. § 3.500.

January 9, 2019, the Board issued the remand order relevant to this appeal, directed at the RO:

> 1. Adjudicate the issue of whether the overpayment was properly created, to include the amount of debt owed and the raised matter of sole administrative error.

> 2. After the issue regarding whether the overpayment was properly created is resolved to the Veteran's satisfaction, perfected on appeal, or finally denied, issue a supplemental statement of the case (SSOC) that addresses the waiver issue, if appropriate (i.e., if creation of the overpayment debt was valid).

Thus, the RO was to make two determinations about the debt: first validity (expressly including the administrative-error question), then waiver.

Over a year later, Mr. Duncan filed with the Veterans Court a petition for a writ of mandamus, seeking to compel the VA to comply with the Board's remand order. The Veterans Court denied Mr. Duncan's mandamus petition. *Duncan v. Wilkie*, No. 20-2116, 2020 WL 1921545 (Vet. App. Apr. 21, 2020). He timely appealed.

## II

We turn first to whether a determination the RO made during this appeal's pendency mooted Mr. Duncan's request for mandamus and, thus, this appeal.

In September 2020, about a month after Mr. Duncan's appeal brief was docketed, the RO issued him a letter responsive to the Board's remand order. S.A. 8, 10, 16. That letter, which included a supplemental statement of the case ("SSOC"), informed Mr. Duncan that the VA had audited his debt (finding the accounting essentially correct except for a two-dollar adjustment) and maintained its determination that he was not entitled to a waiver.

The Secretary suggests that this determination moots Mr. Duncan's mandamus petition. Mr. Duncan's petition had requested that the RO comply with the Board's remand order.[2] And the RO has now done so, says the Secretary: the SSOC explained that the VA "did not change [its] decision" and that Mr. Duncan's claim "remains denied." S.A. 8. It included "an explanation of the evidence . . . used to make the decision," evidence that included a VA memo "upholding [the] validity of [the] incarceration debt." S.A. 12, 16. It explained the basis for denying a waiver. *See* S.A. 14. And it described what would come next: a return to the Board on appeal. *See* S.A. 8.

Mr. Duncan argues that the RO has not yet made the required remand determination. He points out that the RO's decision makes no mention of an "administrative error" determination at all, as the Board's remand order expressly required, and does not include the "appropriate written findings regarding the validity of the debt." Reply Br. 5, 8–9. He points to evidence and arguments that he says the RO didn't consider. And he voices frustration over whether the VA will *ever* address the issue—suggesting that next comes administrative "ping pong," in which "the Board again remands the case back to the VA . . . , who then takes a couple . . . more years to again respond." Reply Br. 9. In short, Mr. Duncan argues that the direct appeal pathway would perpetuate a pattern of remand and subsequent evasion by the VA, resulting in yet another mandamus petition. Reply Br. 9. Indeed, Mr. Duncan suggests that mandamus is necessary to preserve appellate jurisdiction, lest the administrative-error issue never be decided at all and thereby evade review.

---

[2] Mr. Duncan himself describes his petition as asking that "the Secretary" be required "to carry out the [Board's] January 9, 2019 Order." Appellant's Br. 4.

Mr. Duncan's frustration is understandable.  The remand order instructed the RO to issue its SSOC deciding his waiver only *after* "the issue regarding whether the overpayment was properly created is resolved to the Veteran's satisfaction, perfected on appeal, or finally denied."  And that preliminary question expressly required deciding the underlying issue of "administrative error."  Yet the RO's short SSOC makes no mention of an "administrative error" determination, nor does the accompanying one-page debt-validity memorandum.  *See* S.A. 8–16.

What is apparent is that the RO purports to have made a final remand determination on Mr. Duncan's claim.[3]  The Secretary insists that Mr. Duncan is taking issue with the *substance* of that determination—a question better suited to direct appeal.  *See Bankers Life & Cas. Co. v. Holland*, 346 U.S. 379, 383 (1953) ("[I]t is established that the extraordinary writs [i.e., mandamus] cannot be used as substitutes for appeals, even though hardship may result from delay and perhaps unnecessary trial; and whatever may be done without the writ may not be done with it." (citations omitted)).

Mr. Duncan argues that mandamus is warranted because the direct appeal pathway has caused his case to languish for ten years and prevented him from perfecting his appeal.  According to Mr. Duncan, the SSOC has exacerbated this issue rather than mooting it.  *See Martin v. O'Rourke*, 891 F.3d 1338, 1343 (Fed. Cir. 2018) ("With respect to mandamus petitions alleging unreasonable delay, . . . '[b]ecause the statutory obligation of a Court of

---

[3]    The Secretary appears to agree with this characterization.  Further, the apparent finality of the RO's decision is underscored by the fact that the SSOC notified Mr. Duncan of his right to respond and noted that if he does not respond within 30 days, his appeal will be returned to the Board.  S.A. 8.

Appeals to review on the merits may be defeated by an agency that fails to resolve disputes, a Circuit Court may resolve claims of unreasonable delay in order to protect its future jurisdiction.'" (alteration in original) (quoting *Telecomm. Rsch. & Action Ctr. v. FCC*, 750 F.2d 70, 76 (D.C. Cir. 1984) ("*TRAC*"))); *FTC v. Dean Foods Co.*, 384 U.S. 597, 603 (1966) (noting that the All Writs Act "extends to the potential jurisdiction of the appellate court where an appeal is not then pending but may be later perfected").

This case is like *Mote v. Wilkie*, 976 F.3d 1337, 1341–42 (Fed. Cir. 2020). In *Mote*, the mandamus petition accused the VA of unreasonable delay in resolving a claim. After that mandamus petition was filed, the Board remanded the case to the RO for more factfinding. Noting that "a case becomes moot when a claimant receives all [the] requested relief," we held that a mere remand was not the relief the petitioner had requested by writ; rather, by requesting a "decision," the petitioner had sought a grant or denial of benefits. *Id.* at 1341. Similarly, here Mr. Duncan specifically requested that the RO expeditiously comply with the Board's 2019 remand order, compliance that includes deciding the administrative-error issue. A partial decision that evades one of the issues is not what Mr. Duncan requested, and we cannot say that his petition is moot.

III

Moving from mootness to the merits of mandamus, we hold that the RO's determination while this appeal was pending, which elides the administrative-error issue, requires the Veterans Court to reconsider the unreasonable-delay question.

Mr. Duncan's mandamus petition alleged unreasonable delay.[4]   Further, in evaluating whether an alleged unreasonable delay is "so egregious as to justify the extraordinary writ" of mandamus, the Veterans Court must apply the six-factor *TRAC* standard.  *Mote*, 976 F.3d at 1343, 1356; *TRAC*, 750 F.2d at 80.  Those factors provide that

> (1) the time agencies take to make decisions must be governed by a "rule of reason"; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find "any impropriety lurking behind agency lassitude" in order to hold that agency action is unreasonably delayed.

*Martin*, 891 F.3d at 1344–45.

Although it is apparent to us that the Veterans Court applied *TRAC* here, it might be that one or more of these factors comes out differently when considering the RO's apparent sidestep of the merits, especially given the lengthy

---

⁴   Consistent with *Martin*, because the Veterans Court found no unreasonable delay under *TRAC*, it need not have separately analyzed the due process argument premised on that delay.  891 F.3d at 1348–49.  Overall, we see no independent constitutional claim appropriate for review here.

history of this case. Indeed, to the extent that the RO's remand determination shows that the RO has evaded answering the administrative-error question (and does not intend to answer it, having called its remand decision final), it undermines the soundness of the Veterans Court's unreasonable-delay evaluation. *See* Reply Br. 9 (arguing that the SSOC is "more evidence and a clear demonstration" of the unreasonable delay).

The Veterans Court did not have the benefit of accounting for the RO's remand determination when it first ruled. Accordingly, under the circumstances of this particular case, we vacate the Veterans Court's decision and remand for reconsideration of the mandamus petition in light of that development. *See Cox v. West*, 149 F.3d 1360, 1365–66 (Fed. Cir. 1998) (remanding to Veterans Court for reconsideration of mandamus petition in light of changed circumstances since denial).

IV

We have considered the parties' other arguments but find them unpersuasive.[5] For the reasons above, we vacate and remand to the Veterans Court to reconsider Mr. Duncan's mandamus petition in light of the RO's intervening remand determination.

**VACATED AND REMANDED**

COSTS

Costs to appellant.

---

[5]    Mr. Duncan had requested that the government file a supplemental appendix containing specific documents from the record. *See* Order (Nov. 18, 2020), ECF No. 18; Letter (Dec. 15, 2020), ECF No. 25. We have received and considered the supplemental appendix, which the government filed on December 2, 2020.